UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNN LANNUNZIATA, | ) | CASE NO: |
| | ) | |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN STOCK TRANSFER & | ) | |
| TRUST COMPANY, LLC, AND | ) | December 15, 2020 |
| TELADOC HEALTH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES, the Plaintiff, LYNN LANNUNZIATA (hereinafter, the "Plaintiff"), by and through the LAW OFFICES OF JOSHUA B. KONS, LLC, and for her complaint against the Defendants, AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC, AND TELADOC HEALTH, INC. (hereinafter, the "Defendants"), the Plaintiff states as follows:

## I.   PRELIMINARY STATEMENT

1. This is an action for damages regarding the breach of fiduciary duty, negligence, breach of contract, and unfair trade practices with regard to the common stock of Teladoc, Inc. that Defendants held in trust for the benefit of the Plaintiff, who was an employee of Teledoc and purchased such stock under the terms of an employee stock incentive plan.

## II.   JURISDICTION & VENUE

2. Plaintiff brings this action under 28 U.S.C. § 1332(a)(2), asserting that this is an action between citizens of the States of Connecticut on the one hand and a corporations with

principal places of business in New York on the other, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Plaintiff also brings certain claims as denoted herein pursuant to 28 U.S.C. § 1367, asserting supplemental jurisdiction over those claims herein which does not arise under the laws of the United States but which are part of the same case and controversy alleged herein.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as the District of Connecticut was the district in which a substantial part of the events or omissions giving rise to the claim occurred, and where the property that is the subject of the action is situated.

5. Defendants conducted business in the state of Connecticut, and therefore, personal jurisdiction is established.

### III.  PARTIES

6. LYNN LANNUNZIATA is an individual who was at all relevant times residing in the city of Hamden, Connecticut. Hamden is situated in the District of Connecticut.

7. DEFENDANT AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC is a business entity based out of New York that in the ordinary course of business regularly, on behalf of itself or others, transacts business in the State of Connecticut.

8. DEFENDANT TELADOC HEALTH, INC. is a business entity based out of New York that in the ordinary course of business regularly, on behalf of itself or others, transacts business in the State of Connecticut. In August 2018, Teladoc, Inc. changed its name to Teladoc Health, Inc.

### IV.  FACTUAL ALLEGATIONS

9. Plaintiff was one of the first fifty employees of Defendant Teladoc, Inc. (hereinafter, "Teladoc") – now a large publicly traded telemedicine company. As a reward for

her dutiful service with Defendant Teladoc, Teladoc invited Plaintiff to participate in the Teladoc Stock Incentive Plan. As part of the Teladoc Stock Incentive Plan, Plaintiff was granted certain employee stock options which gave her the right, but not the obligation, to purchase Teladoc common stock at a predetermined price. At all relevant times, Plaintiff worked from her home in Hamden, Connecticut for Teladoc.

10. On April 13, 2015, the Plaintiff purchased a new home in Hamden, Connecticut located on 96 Mansur Road. This house was purchased in the Plaintiff's individual name, and the deed for this home was recorded with the Hamden town clerk's office. Prior to moving to Mansur Road, Plaintiff resided at 609 Aspen Glen Drive, Hamden, CT 06518.

11. Immediately upon moving, the Plaintiff updated her mailing address with the United States Postal Service, utility companies, and other entities for which an update is customary. All of her mail was forwarded to the new home address on Mansur Road. At no time did the Plaintiff's personal telephone number or personal email address change. In addition to updating her home address with the customary entities, as the Plaintiff worked from home for Teladoc, she immediately updated her home address with Teladoc.

12. During the summer of 2015, to continue to fuel its growth, Teladoc planned an initial public offering (IPO) of its stock. To capitalize on this development, on or about June 25, 2015, Plaintiff exercised her stock options to purchase 2,366 shares of Teladoc common stock. *See,* Exhibit 1. As seen by Exhibit 1, Plaintiff listed her 96 Mansur Road address as her address of record.

13. Plaintiff consummated this stock transaction, and held her Teladoc shares with Defendant American Stock Transfer & Trust Company, LLC ("AST"). Upon information and belief, Teladoc contracted with AST to serve as administrator of the Teladoc Employee Stock

Option Plan and transfer agent for shares of Teladoc stock purchased by employees like the Plaintiff under the Teladoc Employee Stock Option Plan. As an employee of Teladoc who purchased Teladoc stock under the Teladoc Employee Stock Option Plan, Plaintiff was an intended third-party beneficiary of the contract between Teladoc and AST.

14. On July 1, 2015, Teladoc conducted the IPO of its common stock on the New York Stock Exchange. Teladoc's shares opened trading at $29.90 per share. At the time of the IPO, Plaintiff's common stock in Teladoc would have been worth $70,743.40. Plaintiff intended to hold her Teladoc shares with AST as an investment for her retirement. Today, the Plaintiff's investment in Teladoc (NYSE: TDOC) would be worth more than $450,000 given Teladoc's current market price.

15. Thereafter, Plaintiff left the employment of Teladoc but continued to hold her shares in Teladoc with AST. On a regular basis, Plaintiff and her domestic partner (boyfriend) would call AST to discuss the Plaintiff's account. At all relevant times, Plaintiff reasonably believed that her Teladoc stock was being held with AST, and was reasonably safeguarded. She was never notified by Teladoc or AST of the need to move such shares to another transfer agent or custodian, or about the need for an update of her address.

16. In early 2020, Plaintiff and her boyfriend contacted AST to check on the Plaintiff's account and was notified that AST no longer held the shares. AST further told the Plaintiff's boyfriend that the shares had been sent to the State of Connecticut.

17. Extremely concerned about her Teladoc stock – which was the Plaintiff's retirement nest egg – the Plaintiff immediately contacted the State of Connecticut. The Plaintiff was directed to the Office of the State Treasurer – Unclaimed Property Division, and was advised to file a claim for unclaimed property.

18. To the Plaintiff's great surprise and disappointment, the Plaintiff learned that her Teladoc shares were sold without her knowledge, and the cash proceeds of $63,432.34 was transferred to the Connecticut State Treasurer's office as unclaimed property. Had Plaintiff been properly informed about a possible abandonment and sale of her Teladoc stock, she would have immediately taken whatever steps were necessary to prevent this from occurring.

19. At no time between June 25, 2015 and present was the Plaintiff contacted by any medium by Teladoc, AST or any of their agents regarding the possible abandonment and sale of her Teladoc shares. Had the Plaintiff been contacted by Teladoc, AST or any of their agents about an outdated address, she would have immediately updated it as she had done with every other entity. To make matters worse, as demonstrated by <u>Exhibit 1</u>, at all relevant times both Teladoc and AST <u>had Plaintiff's current address of record on file</u>. Simply put, the transfer and sale of the Plaintiff's shares would not have occurred but for Teladoc's and/or AST's failure to contact the Plaintiff regarding the possible abandonment and sale of her Teladoc shares.

***Federal Law Requires AST to Safekeep Plaintiff's Shares, and to Have a Reasonable System of Locating Lost Securityholders***

20. Rule 17Ad-17 of the Securities Exchange Act of 1934 (the "Safeguarding Rule") requires transfer agents like AST in possession of funds or securities related to transfer agent activities to assure that:

 (1) The securities are held in safekeeping and are handled, in light of all facts and circumstances, in a manner reasonably free from the risk of theft, loss, or destruction; and

 (2) The funds are protected, in light of all facts and circumstances, against misuse.

21. Furthermore, Exchange Act Rule 17Ad-17 (the "Lost Securityholder Rule") requires every transfer agent that maintains an issuer's master securityholder file to conduct

searches for lost securityholders within a defined time period and send notices to unresponsive payees within a defined time period. A transfer agent must keep and maintain records to demonstrate compliance with the rule including written procedures that provide the transfer agent's methodology for complying with the rule. A transfer agent (AST) would normally provide detailed reports to the securities issuer (Teladoc) regarding lost securityholders.

22. More specifically, the Lost Securityholder Rule requires transfer agents like AST to exercise "reasonable care" to ascertain the correct addresses of such lost securities holders. It states:

> § 240.17Ad-17 Lost securityholders and unresponsive payees.
>
> (a)(1) Every recordkeeping transfer agent whose master securityholder file includes accounts of lost securityholders and every broker or dealer that has customer security accounts that include accounts of lost securityholders shall exercise reasonable care to ascertain the correct addresses of such securityholders. In exercising reasonable care to ascertain such lost securityholders' correct addresses, each such recordkeeping transfer agent and each such broker or dealer shall conduct two database searches using at least one information database service. The transfer agent, broker, or dealer shall search by taxpayer identification number or by name if a search based on taxpayer identification number is not reasonably likely to locate the securityholder. Such database searches must be conducted without charge to a lost securityholder and with the following frequency:
>
> (i) Between three and twelve months of such securityholder becoming a lost securityholder; and
>
> (ii) Between six and twelve months after the first search for such lost securityholder by the transfer agent, broker, or dealer.

23. The bare minimum legal requirement that transfer agents is to conduct two database searches using at least one "information database", which is defined by § 240.17Ad-17(b)(1) as:

> (1) Information data base service means either:
>
> (i) Any automated data base service that contains addresses from the entire United States geographic area, contains the names of at least 50% of the United

6

> States adult population, is indexed by taxpayer identification number or name, and is updated at least four times a year; or
>
> (ii) Any service or combination of services which produces results comparable to those of the service described in paragraph (b)(1)(i) of this section in locating lost securityholders.

If either Teladoc or AST had searched an "information database", they would have detected the 96 Mansur Road address where Plaintiff resided.

24. However, given that Teladoc (and ostensibly, AST) had the current home address, telephone number, and personal email address of the Plaintiff, the exercise of reasonable care required either Teladoc or AST to contact the Plaintiff by other means to determine her correct address if they did not have that on file. Unfortunately for the Plaintiff, no one at Teladoc or AST ever contacted her to determine her correct address.

25. As a result of the foregoing acts and omissions of Teladoc and AST, Plaintiff has suffered actual damages as a result of the abandonment and sale of her Teladoc stock.

## V. TRIAL BY JURY

26. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## VI. CAUSES OF ACTION

### COUNT I: BREACH OF FIDUCIARY DUTY
### (As to All Defendants)

27. Plaintiff realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

28. As a corporation and a transfer agent for a corporation, Defendants each owed fiduciary who owe the highest duty of care to shareholders of the corporation like the Plaintiff.

7

This duty included ensuring that it had accurate information recorded for the shareholders in each of Defendants books and records.

29. In addition, this fiduciary duty required the Defendants to act with due care and in the best interests of the shareholders like the Plaintiff.

30. Plaintiff completely relied on the ability of Defendants to maintain accurate books and records, and to contact the Plaintiff in the event that her Teladoc stock was subject to possible abandonment or sale. The acts described above constituted a breach of this fiduciary duty, showing a lack of due care and complete indifference and disregard of Plaintiff's best interest. As a direct and proximate result of said breach, Plaintiff has suffered damages.

31. As a direct and proximate result of breach of fiduciary duty by Defendants, Plaintiff has been damaged in an amount to be determined according to proof.

**COUNT II: NEGLIGENCE**
**(As to All Defendants)**

32. Plaintiff realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

33. Defendant Teladoc had a common law duty to have accurate contact information for Plaintiff (its employee) for employment and tax reporting purposes.

34. Defendants each had a duty under federal and state law to ensure that they maintained accurate books and records with regard to Plaintiff and her Teladoc stock. In addition, Defendants each had a duty to safeguard Plaintiff's Teladoc stock, and to use "reasonable care" in ascertaining the Plaintiff's last known address before abandoning and/or selling her Teladoc stock.

35. Defendants breached their duty by (i) failing maintain accurate books and records with regard to Plaintiff or have accurate contact information for the Plaintiff; (ii) failing to

exercise "reasonable care" ascertaining the Plaintiff's last known address before abandoning and/or selling her Teladoc stock; and (iii) by failing to communicate with the Plaintiff by other means prior to abandoning and/or selling her Teladoc stock.

36. As a direct and proximate cause of Defendants negligence, the Plaintiff has been damaged suffered damages in an amount according to proof.

### COUNT III: BREACH OF CONTRACT
### (As to All Defendants)

37. Plaintiff realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

38. Defendants entered into a valid and binding contract written contract, whereby Defendant Teladoc contracted with Defendant AST for its transfer agent services. At all relevant times AST acted as an agent of its principal, Teladoc.

39. As a shareholder of Teladoc, Plaintiff was an intended third-party beneficiary of the contract between the Defendants.

40. As part of the contracted services, AST contractually agreed to adhere to the applicable state and federal laws with regard to lost securityholders and abandonment of stock held by Teladoc shareholders.

41. As alleged above, AST breached this contract by failing to use "reasonable care" to ascertain the last known address of the Plaintiff, and by failing to contact the Plaintiff prior to abandoning and/or selling her Teladoc stock.

42. As a direct and proximate result of this breach of the contract, Plaintiff has been damaged in an amount to be determined according to proof.

## COUNT IV: VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (As to All Defendants)

43. Plaintiff realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

44. Both the Plaintiff and the Defendants are a "person" as defined by Conn. Gen. Stat. § 42-110(a)(1)

45. Defendants have, in the course of conducing its trade commerce in Connecticut, engaged in unfair acts as referenced herein, in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a, et seq.

46. These unfair acts, include, but are not limited to, failing to exercise reasonable care in connection with the abandonment and/or sale of the Teladoc stock, and the failure to contact the Plaintiff by regular mail, email, or telephone regarding the abandonment and/or sale of her Teladoc stock which was of substantial value.

47. The Plaintiff has suffered an ascertainable loss of money and property as of the unfair trade practices the Defendants engaged in under Conn. Gen. Stat. §42-110b.

48. As a direct and proximate result of Defendants' violations of CUTPA, Plaintiffs is entitled actual damages in an amount according to proof, and along with attorneys' fees and costs.

/ / /

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by and through her attorney, respectfully requests that the Court enter judgment against Defendants for the following:

1. Damages in an amount according to proof, or reissuance of 2,366 shares of Teladoc stock at the current market price;

2. Costs and reasonable attorneys' fees pursuant CUTPA, *Conn. Gen. Stat. § 42-110(g)(d)*;

3. Punitive damages to punish Defendants for any reckless and intentional misconduct; and

4. Such other and further relief as may be just and proper.

Dated this December 15, 2020

                                            Respectfully submitted,
                                            **LYNN LANNUNZIATA**


                                            By: /s/ Joshua B. Kons
                                            Joshua B. Kons (ct29159)
                                            LAW OFFICES OF JOSHUA B. KONS, LLC
                                            92 Hopmeadow Street, Lower Level
                                            Weatogue, CT 06089
                                            T: 860-920-5181
                                            E: joshuakons@konslaw.com